case which is 20-11-688 Motley v. Taylor. We have Mr. West here for the appellant, Mr. Smith for the appellee. Mr. West, you can proceed when you're ready. May I please recall Michael West for plaintiff Sharon Motley. Like tens of thousands of other Alabamians, Sharon Motley's driver's license was suspended because she could not afford to pay a traffic ticket and would have remained suspended indefinitely if she had not received a windfall in a separate lawsuit that changed her financial circumstances. As Justice Powell observed in Argersinger, the suspension of a driver's license can be more serious for some individuals than a brief stay in jail. Ms. Motley's suspended license made it more difficult for her to obtain employment, job promotions, and to travel to meet basic medical needs. She was arrested and jailed because of Alabama's limited public transportation. Can I ask you a quick favor, not to knock you off your stride, but we had this problem yesterday as well. If you'll step back from the mic just a bit. We're getting some feedback when you're too close. We just learned that yesterday. Thanks so much. And it exposed her to possible arrest and jail when, because of Alabama's limited public transportation, she drove on a suspended license. This is precisely the type of claim that the en banc court in Jones found would resemble Bearden. In Jones, the en banc court held that Florida's disenfranchisement system Yeah, yeah. So, I mean, I have a question for you. I think Judge Hull and I both have questions for you. You mentioned that she got this windfall and managed to pay off her debt. So let's start with mootness, right? And this exception, which I'll have to confess was new to me, this inherently transitory exception. It was new to me. I never heard of it. I thought surely the parties had mislabeled the capable of repetition exception, but lo and behold, there's this other one that applies in the class action context, I guess. I thought you all agreed her claim's moot. The whole question we've got here is whether, since her claim is moot, can she still, can the class now proceed? I mean, she's moved to Georgia. This is as moot as moot gets. Okay, so as to her, because she lives in Georgia now. We're not even looking at possibly this happening again. She's got a Georgia license, so it's done. You don't dispute mootness as to her, do you? No, but I will clarify that she lives in Alabama again, and she just recently got her Alabama driver's license. But it's new to me. Okay, but it's moot as to her. Correct. So take that as a given whether you agree or disagree. Yes. And tell us why then, in terms of class representative, because this is pretty tricky here because the rules of the road have also changed. So it's not only moot as to her. The Alabama provisions after her case, they revised, and I'm just giving you the backdrop so you can address moot. They revised the UTC pretty significantly. It now says, gives you notice. I'm not saying it's constitutionally problem-free anymore, but it's materially different than when this case was filed. It says you've got a notice that if you don't pay, your license is going to be suspended. The notice, the UTC also says you can request a hearing and you can do blah, blah, blah. So my concern is her ability. We don't have any concrete facts now about this whole new regime. So we've got two problems here. The law has changed, or at least the factual underpinnings of what you'd have to look at has changed, and she's not a good class representative. And so why can't you? I mean, I can't believe you can't find somebody in Alabama pretty easily who said their license is suspended for failure to pay in the last year. And then we'd know how this new system works. Let me address that point first. So we brought claims on behalf of people whose licenses are currently suspended, right, and there's about 25,000 of them, close to 25,000 of them in Alabama. They didn't receive the benefit of the new notice under the system. Their licenses remain suspended. They didn't receive an indigency determination or even notice that their licenses could be suspended. Now, let me go to the inherently transitory exception. It's new because it's not been applied in Alabama or in this circuit, but our sister circuits have uniformly found that the exception applies when there's other class members who are suffering the same injury and there's uncertainty about whether a claim will remain alive long enough for a court to certify a class. The first requirement is satisfied because, as in Gerstein, there are thousands of people whose licenses were suspended, and the systemic concerns that gave rise to this lawsuit remain. As to the second requirement, the 2nd, 6th, 7th, and D.C. circuits have all described the essence of the exception as whether a claim is of inherently uncertain duration rather than of inherently limited duration. Can I ask you a question about that? So maybe the courts have just mislabeled this exception, but inherently transitory to me sounds like necessarily and by definition transitory, not like possibly transitory, but you're saying that like the real sort of motivating influence behind this exception is something about uncertainty. Is it just a mislabeling of the exception? Yes. We're not interpreting a statute here. We're interpreting a judge-made exception, so we have to look to the facts and the context of the cases that arose, and those cases are focusing on whether a claim is of uncertain duration. So in Gerstein, for example, the Supreme Court didn't conclude that everyone's released from pretrial detention in a short period of time. The record didn't reveal how long, on average, people were in pretrial detention, but they recognized people staying in pretrial detention for a substantial period, but it was inherently transitory because a district court couldn't know for any given class member when they'd be released from pretrial detention, and subsequent Supreme Court cases have also focused on that uncertainty. So in Nielsen v. Preop, it's a case that the district court relied on in the indicative ruling, but we didn't cite in our briefs. It was claims brought by people who were in immigration detention without a bond hearing, and the record showed that the average noncitizen remained in immigration detention for a year, and some people remained in detention for many years. That is ordinarily long enough for a court to certify a class, but the court found that the exception applied because a district court couldn't know when someone might be released, when that removal decision might be made, and that's the same for someone with a suspended license. Their license could be suspended only for two weeks because they work paycheck to paycheck. When they get that next paycheck, they get their license reinstated, but they might be unemployed and then get a job, and their financial circumstances change. And this is also important. Under Rule 26.1, Is it the length of the suspension that's inherently transitory? I had trouble figuring out, even before we get to it, what's inherently transitory. What is it that's supposed to be inherently transitory? Is it the violation? Is it not that the violation is transitory? No, there's uncertainty about how long someone's license could remain suspended. Okay, so your theory of the case is just because I don't know what it is, and I'm just trying to narrow it. What has to be inherently transitory is the length of the suspension, the results of the violation. Yeah, so just like there's uncertainty about how long someone might be in pretrial detention and that makes a claim inherently transitory, so too with a license suspension where you don't know how long that may last because financial circumstances change. But also there's uncertainty because under the rule, the state can unilaterally moot a plaintiff's claim by waiving or emitting the fine, just like the state can do in Gerstein by releasing someone on their own recognizance or in Wilson by processing that Medicaid application. Can I ask you a question just about this exception just so I understand, again, kind of the blocking and tackling of it? Is the purpose of the exception that if the named plaintiffs, if the class rep's claim or punishment is inherently transitory, we may not get to class certification before that claim evanesces? If so, then aren't we concerned solely about the inherent transitoriness, if that's a word, of the plaintiff's own claim? Or are we concerned about sort of the nature of claims of class members generally? Because, I mean, here the plaintiff, I mean, what went on for six years or some such, right? I mean, there's nothing really transitory, let alone inherently transitory, about a six-year period of suspension. So you look at the nature of the claim itself, and that's what our scissor circuits have said. You don't have to show that every hypothetical plaintiff's claim faces certain dismissal, and that's consistent with Gerstein where the record didn't show how long the named plaintiff or even whether the named plaintiff was still in pretrial detention. I mean, I guess the reason I'm asking is that if the whole purpose of the exception is to preserve the ability to get to class certification for fear that the named plaintiff's claim will moot out too quickly, then why, and maybe I'm just misunderstanding, but why is it that we care sort of about the nature of the claim generally? Shouldn't we be concerned about, like, this named plaintiff? Is he or she going to evanesce too quickly before we can turn to these people? Well, the same uncertainty existed for Ms. Motley, right? At the time of her suspension, she was unemployed, right, and at work intent to hire jobs. You know, as another district court observed, predicting that she would later have her rights violated under a separate statute and favorably settle that case requires a high degree of predictive ability bordering on clairvoyance. You know, the nature of her claim too, just like the nature of the claim in its entirety, is of uncertain duration, right? Judge Watkins got it right, I think, that hindsight is not particularly helpful. Can I ask you just a question? I see that your time is running out, and we've been asking you lots of questions, but I have one more just about the statute of limitations issue. Sure. What sort of, like, new act do you contend occurred that would have constituted, again, sort of in the lingo of the case, not a continuing harm from a preexisting act, but a new harm? Like, what new happened? It's easy to see, say, in a discrimination case where, for instance, like, each time you get paid, right, you're getting paid less and less and less, so every two weeks. But here, like, what new happened? Yeah, so, you know, the continuing harm is the continuation of the license suspension, but there's also a continuing violation in the reinstatement process because that's made contingent on payment in full. So that's exactly what happened to Ms. Motley. So she went back to the district. Her license was suspended solely because she couldn't afford to pay, and then she went back to the district court in the last two years, was found indigent, and the court told her, you can't get your license back even though you're indigent because you've got to pay in full to get it back. And so there's a differential treatment. Does that mean that the plaintiff can unilaterally restart the statute of limitations simply by going and asking again? No, no, no. The violation continues into the present because your license is suspended solely because you can't pay, and then that suspension can't get lifted unless you pay in full. And so there's a differential treatment between those who can pay and obtain immediate reinstatement and those who can't and have their license suspended indefinitely because they can't pay. But I think this – I want to make another point on the statute of limitations, if I may. Yeah, please. Which is that, you know, Ms. Motley didn't know about that her license was suspended at the time of the suspension, right? The district court just inferred that because it took judicial notice of the date of the suspension. But she would proffer in discovery that she didn't learn about that until she met an SPLC investigator within two years of filing the complaint. And let me explain why. So the standard traffic ticket in Alabama didn't tell drivers that your licenses would be suspended if you failed to pay. And Ms. Motley submitted a declaration saying she never received any notice from the court that she faced suspension, and she never got notice that her license was suspended. Here, statute of limitations defense is an affirmative defense, and Aaliyah has a burden of persuasion and production. And they didn't produce anything to say that she knew or should have known about her suspension. And her license had been suspended already for many years for a different reason in a different court, so nothing should have alerted her to that suspension. See, I guess I would have thought, and you can tell me how I'm wrong about this, I would have thought that sort of the speech that you just gave communicates to me that fundamentally your complaint is about the suspension of the license without notice or an opportunity to be heard or any sort of determination as to whether or not she was indigent. But that all happened like a long time ago. And so she is continuing to suffer harm from that violation, but she's not continuing to suffer new violations. There hasn't been sort of a new failure to notify and opportunity to be heard and eliminate the possibility of indigency. That happened one time, and I don't mean to make light of it, but the harm from that earlier violation is just ongoing. No, I think that, you know, it's not just about the suspension without added process, but the continuation of that suspension into the present where there's a differential treatment just like there is. So in Williams they tell us equal protection is implicated because when you punish someone who can't pay because you're singling out a class of individuals who can't avoid the sanction because they're indigent. It's the same thing in the reinstatement process. So as long as you are indigent for purposes of being able to pay off your traffic tickets, there's a class of individuals who can't obtain reinstatement. So it's the same thing but on the back end, and that's the continuing violation. It's very similar to, say, Beavers where fathers couldn't get insurance coverage for their children who didn't live with them that mothers could obtain. That was pursuant to a policy, and that continued into the present every time, every day that the fathers couldn't get the insurance coverage. It's the same thing here. There's a policy where you can't get your license back until you pay in full, and that unequal treatment between people who can pay and people who can't is a continuing violation. So this may be like the dumbest question of all time, and feel free to say so, but I mean, like, then what constitutional violation is not a continuing violation? I mean, like, if you want to go out there and picket on the sidewalk and the police say no for no good reason, then, I mean, does that mean in like 10 years you can still sue because you're continuing to suffer a continuing violation of your free speech rights? I just don't quite understand. No, so it would be different, and the District Judge Trauger in Robinson I think highlighted this well. So there wouldn't be a continuing violation if your license was suspended and it got suspended for a year for everyone if you didn't pay. Then there wouldn't be that differential treatment in that reinstatement process between drivers who can pay and cannot because everyone is treated the same. You don't pay, your license is suspended for a year. But that's not Alabama's system. Alabama's system is you can obtain immediate reinstatement if you pay in full. It's only the indigent who are subject to indefinite suspension and can't get their licenses reinstated so long as they are indigent for purposes of paying off their fines. Which goes to the new system as I understand it. If you get a payment plan, they don't suspend your license. They let you pay on the payment plan unless you default on the payment plan. That's a really good question, Judge Hall. Because that's what I was looking at the UTC now, and it just goes to, I mean, I think there's a real serious question that her particular claim is barred by the statute of limitations which then avoids a whole lot of other difficult issues. But I'm curious, it looks like in terms of, I'm not sure they're all the way there. I still think there's some problems with the UTC, but it looks like they don't suspend. She asked for a payment plan and she's on the payment plan. They wait. That's a great question, Judge Hall. And what I want to note is under Alabama's rule of criminal procedure, they don't have to put you on a payment plan. They don't have to give you more time. It is discretionary because they don't know who can pay and who don't pay. So somebody comes in and asks, and they tell you in the UTC, you can come in and ask for a payment plan. I actually think maybe they've got to have a pre-deprivation hearing first on the payment plan. I mean, not just you come and ask. I mean, that would be a hard issue. Do you have to put the burden on them to ask or say, we will set a hearing notice here on this UTC like they do for the traffic ticket? You can do, but don't they give you a chance to ask before they suspend it? Under the new system, yes. But under the rules, even if you are indigent, you are not entitled to a payment plan. It is entirely discretionary under the rules. You're entitled to request one, right? Entitled to request one under the new system, but you're not entitled to a payment plan. But if you request one, of course you're not entitled to it because it may come out at the hearing you have a lot of money. Even if you are indigent, you are not entitled to a payment plan. That is the problem. Because they don't have a guideline that says if they make this, so you get the payment plan. Let me draw on that. I mean, it's like informal paupers. You're not entitled to informal paupers. I think you come in and you make a request and we generally grant. Even if you are found indigent, under the rules of criminal procedure, they can suspend your license for failing to pay. The rule, which has not changed, says if you fail to pay, the state may suspend your license. There's only one finding that has to get made, that you failed to pay. That stands in stark contrast to other provisions in Rule 26.11, which prohibit jailing someone unless there's a willfulness finding. The state drew, the state made a distinct choice. You've answered my question. It is under the new regime, which looks a lot better, but you're saying that there's still problems there. Correct. Okay. All right, very well. We've carried you well past, but you've got your three minutes of rebuttal time. Mr. Smith, you've got 15 minutes. Good morning, and may it please the Court. Brent Smith on behalf of Secretary Hal Taylor of the Alabama Law Enforcement Agency. The district court's judgment dismissing Motley's claims should be affirmed for three straightforward reasons. First, because she admitted her own claims when she paid off her outstanding fines. Second, because the statute of limitations bars this suit brought six years after her license was suspended. And third, because her merits challenge can't overcome either the facial standard or rational basis review. And I'd like to start with mootness because it goes to jurisdiction. And Judge Newsom, I think your question about the purpose of the inherently transitory doctrine, which is the only thing we're dealing with here. Motley doesn't still have a live stake. There wasn't a class certified whose independent status can be relied upon. We're dealing only with the inherently transitory exception. And the Supreme Court in the Genesis Healthcare case really refined the parameters of this exception and made clear that the purpose is to prevent claims that are so short from evading judicial review in some form because you didn't have time to certify a class. Specifically, the case says that it applies when claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed rep's individual interest expires. And further, it crystallizes the point and explains that the doctrine has invariably focused on the fleeting nature of the challenge conduct. So it's not about the claims and it's not about uncertainty. It's about how long the challenge conduct lasts. And here, Motley's license was suspended for six years for failure to pay and 14 years in total because it was suspended eight years before that for failure to appear. All of the evidence in the record is that license suspensions are not fleeting, per se, or need not be. Motley's certainly wasn't. Can I ask you a quick question just about another thing that Genesis says? So Genesis also says, the exception was developed to address circumstances in which the challenge conduct was effectively unreviewable because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course. By no plaintiff, does the court there mean no named plaintiff or no putative plaintiff? I think it means no named plaintiff, Your Honor. And Gerstein itself, when it sort of made the proto of this exception, and the exception wasn't even necessarily required in Gerstein, it sort of talks about there is a class certified and maybe this is capable of repetition, innovating review, and then goes on to say this. But Gerstein said that it's by no means certain that any individual named as plaintiff would be in pretrial custody long enough for the district court judge to certify the class. So I think they're still talking about named plaintiffs. But getting back, Genesis again just hones in on the fleeting nature of the conducts. And here we just see that that's not the case. All of the evidence in the record is license suspensions for failure to pay can last up to six years. What about their point that just as in Gerstein the magistrate can like, or whoever, can just like spring the person out of jail and sort of like unilaterally moot the claim, the law enforcement here could theoretically just moot the issue by remitting the fine. I suppose that's true, Your Honor, but that's not what happened here. In fact, Motley mooted her own claim. We sort of have the inverse of that. She knew it would become moot when she paid off her fines. She didn't notify the district court that she was doing that. She didn't ask for them to expedite. Yeah, but I guess the reason I'm asking is that I took your point in your briefs to say, especially less so about Gerstein than about the out-of-circuit cases. You said, well, those cases are different because in those cases to the extent they emphasize uncertainty, that's because it was uncertain to the plaintiff, him or herself, because the defendant could like unilaterally kind of zap the claim by just like saying never mind. And they say, yeah, so too here. Why is that? Why is the claim here less uncertain in the out-of-circuit sense than those cases? Well, Your Honor, I think that goes back to Motley who mooted her own claim. We just don't have that situation. When she paid the fine, she mooted the claim. Her fine wasn't remitted. Aaliyah didn't take any action to reinstate her license. Rather, she paid off what she owed and then received reinstatement. This is very unlike the touchstone cases from the Supreme Court applying this exception in general pretrial detention cases where it's, you know, by nature temporary as Gerstein describes it because at any given moment you're let out. That's just simply not the case here. And further sort of going to this uncertainty versus fleeting nature, emphasizing the uncertainty would lead to some absurd results. So, for example, in the county of Riverside v. McLaughlin case, there they were challenging detention without a probable cause hearing that would never under any circumstances last more than seven days and then only on Thanksgiving weekend. So there we're dealing with a very certain amount of time but brief. But in that case, the court applied the inherently transitory exception, which shows that it's more about the fleeting nature of the conduct rather than the uncertainty of the claims as Genesis crystallizes. And sort of one last point on this, even if these claims are fleeting, then that sort of is a problem for Motley's merits claims because it undercuts how much the interest is affected. And then I'd like to turn to the statute of limitations, which sort of on similar grounds here, Motley's license was first suspended in 2005 and then in 2013, she was pulled over for driving on the suspended license while driving a convertible blue Mustang and failed to pay her fine, went to court, pleaded guilty, failed to pay her fine. Six years later, brings this suit. There's no dispute on the face that this falls outside the statute of limitations. Instead, she's relying only on the continuing violation doctrine. But that doctrine doesn't apply here for two reasons. Even before we get to the continuing harm portion of that test, this court in McGroarty v. Swearingen and in the HIPP v. Liberty National Life Insurance Company case has made clear that this is an equitable exception. And so it doesn't apply where the facts leading to the challenge conduct here, the suspension should have alerted a reasonable person to act to assert his or her rights. And here Motley had her license suspended before. She knew this was a possible consequence. She should have known to assert her rights within the limitations period. So she's not eligible for this doctrine sort of from the get-go before we even get to the continuing harm portion of the test. Under Alabama law, is the suspension of the license, in effect, part of the judgment? No, Your Honor. Like in a sentence of probation or something like that, you have all kinds of conditions. So it is going to happen. No, Your Honor. The license suspension doesn't occur until she doesn't pay her fine. Well, that's what I mean. But that's a condition of the fine. If you don't pay it, it's to be suspended or not, is it? No, Your Honor, because it still is a discretionary matter for the court, and it's outlined by the rule of criminal procedure. So the traffic court sentences the plaintiff to whatever. Here it was $310 fines and costs. And then if she pays that, there's no suspension. And even if she doesn't, the court can choose whether or not to suspend. But it's not an inherent. Whether or not the license will be suspended? That's right, Your Honor. Yes, it's not an automatic. Well, then it's part of the judgment, part of the sentence. No, Your Honor, I don't think so. Well, let's put it this way. Let's suppose the issue is before the court about suspending the license. If she says I can't pay, if the judge suspends the license, suspends the suspension, there's no problem, right? Suppose the judge denies it. It doesn't have to become part of the judgment. That's all I'm asking. No, Your Honor, I don't think so. I think it's a collateral mechanism to enforce the judgment because the fine still stands. It's not converted to a suspension. It's the state's collateral enforcement procedure. That's right, Your Honor. That's the form it takes because it doesn't automatically. It's not like probation revocation where it just changes to imprisonment. Here it's discretionary. The court can impose it if it likes, but it's not. I don't know if it works here in Georgia. It's just the clerk of the court will send notice to the state, and the state then suspends it. The Department of Public Safety suspends the license. I don't know how it works in Alabama. The way it works under this rule, Your Honor, is that it's the rule of criminal procedure 26.11 provides. But who does the suspension? Who enters the suspension? The court itself, Your Honor. So if it's seen that the order is not complied with, then the traffic court judge, the district judge can enter the suspension, and then that's sent to the Alabama Law Enforcement Agency who labels the license as suspended. But it's done by order of the court. Okay. Not by a clerk, but by the judge. If the judge says no suspension of the license, is that final and the state obeys the judgment? Yes, Your Honor. Leah here is acting only pursuant to court order. Well, before the judge finds the person guilty and imposes a sentence, I suppose they could raise these issues at that time, could they not? That's exactly right, Your Honor, and that's what should have happened here. And if the motorist loses, they could take an appeal, well, they could file suit in the circuit court. I think an appeal would probably be the more – But is there a record? If there's no record, do you have to file a lawsuit? There is a record, Your Honor, and we actually have that record in – There is a record. There is a record. In the municipal court. Well, this wasn't from municipal court. This was from Montgomery County District Court, which is the lowest level state trial court in Alabama. And some municipal courts where there's no – well, is it always the district court? Municipal courts can do it too, I believe, but here the failure to pay – These were in the district court. These were in the district court. So they could have been appealed. Yes, Your Honor. Yes, Your Honor. What should have happened here was Motley should have raised her failure to pay at the time she went and pled guilty and asked to be put on a payment plan. Well, the district judge is being asked to review that judgment, is it not? That's right. While that's – But that's barred by the Rooker-Feldman. What's left is the Rooker-Feldman. Well, that would be in this case. But here Motley is bringing a facial challenge rather than an as-applied. Yes. So the Rooker-Feldman – As-applied, she's out. That's right. That's right, Your Honor. All we have is the facial challenge. That's right, Your Honor. So we're dealing only with the facial challenge, which is the highest possible claim, and I think this sort of goes nicely to why her facial challenge fails because the rule, 26.11, provides for all the procedural protections that she's asked for. Yes, but the problem is she had no notice. Nobody had driver's license people. Yes, that rule was always there, but there's no notice. You just suspend the license. I mean, that's why the UTC has been amended. Right, there was no notice until the amendment, right? Other than the laws out there, and I guess everybody knows the law, but obviously nobody knows that law that you can go do that. Well, Your Honor, yes, there was no notice on the ticket she received. There's no notice at all other than you'd have to be familiar with the criminal rules of procedure. Well, that's right, Your Honor. Okay. The same is true for criminal laws. I understand that. But also to that point, Motley's not challenging the notice in this appeal. She disclaimed the challenge below and expressly disclaims it here. She's only challenging that she's not mandatorily receiving a Bearden hearing and that all people who have their license suspended don't receive a Bearden hearing up front. And so 26.11 expressly provides for those procedures. It allows— Is he anywhere near accurate that although her claim may be moot and although the rules of the game may have changed with amendments to the UTC and other changes, there's still probably 20,000, 25,000 people sitting out there with suspended licenses under what I'll call the old system that had no notice or no effective notice? Your Honor, I don't know what the current numbers are. I think those figures are from April of 2018 before the new language went into effect on the ticket. So we don't know what those numbers are at this point, which is also sort of a problem looping back to the inherently transitory exception. Mollie hasn't shown that since that language has been updated that other people continue to be subject to the same challenge conduct that she faced. But again, just to the facial standard, Mollie can't prevail here because— But it may also go to why it's not inherently transitory that he's saying there's 20,000 people out there still affected by it. Well, if there are 20,000 people still out there— I mean, if there are 20,000 people out there still under the old system and he's claiming there's so many people, maybe it's not inherently transitory. Well, Your Honor, it's a two-part test. So it first goes to—well, it's not inherently transitory, but it considers first the fleeting nature. So if they are still subject to that challenge conduct, then it's not fleeting. And if they're not out there, then there aren't persons similarly situated. They may be barred by the statute of limitations too. So that's the other problem. As well, Your Honor. But on the facial standard, again, the rule just provides all of these procedural mechanisms. The judges can consider ability to pay. They can impose a payment plan. All Motley had to do was ask to be put on a payment plan. And if she wasn't, she could have appealed and asserted her beard and challenge through the state courts, which I'd like to point out is how all of the beard and line of cases came about. In each case, there was an— But before the rule changed, who do you know to ask? You didn't even tell you who to ask. What court to go to to ask? I mean, that's such a facile answer. All she had to do was ask. Ask who? Ask when? Ask where? Where do you send it? I mean, even this ticket, I don't know that it tells you right now where you go ask or send it. It seems like this could be a lot better revised ticket. And if you want a payment plan, here's who you write. Don't plead guilty. Just ask for a hearing. And at the time of your guilty plea, we'll put you on a payment plan if you can't pay or something. It seems like this could be revised, this UTC, to solve a lot of these problems. Well, Your Honor, at the time Motley went to the district court, they have like a sign-in sheet that's very simple. It says guilty plea. There's a thing that says review. There's a thing that says not guilty. And then there's an option that says other, talk to the prosecutor or whatever. District court in Alabama is very informal. You don't have to have representation. It's effectively sort of like the people's court. It's a lot of back and forth with the district judges. And so Motley, at that time, when the judge handed down the sentence, could have asked to be put on a payment plan or could have asserted her rights at that time. And she didn't. Instead, she's asking the state. I bet they didn't review her rights either before about pay you to pay if you can't pay. I doubt they read her rights. Well, no, Your Honor, it's not like a Miranda proceeding. But the procedures allow for that kind of hearing. Had she asserted it, she would have been entitled to it and then could have sought it on review. All right. Thank you. Very well. Thanks so much. Mr. West, you've got three minutes remaining. So I'll start by briefly going back to the inherently transitory exception. So the second, six, seven, the D.C. circuits have all said that the essence of the exception is whether a claim is of inherently uncertain duration rather than inherently limited duration. If this court held otherwise, it would stand alone and create a circuit split. I also want to talk about Genesis very quickly because, yes, Genesis said that claims were inherently transitory if they were fleeting. But as the Sixth Circuit recognized in Wilson, that doesn't preclude a finding that a claim is also inherently transitory if it's on inherently uncertain duration. And we know that because six years later in Nielsen v. Preop, the Supreme Court found that the exception applied to people in immigration detention, even though the record in that case showed that people were in immigration detention for a year and some for many years. I also want to talk a little bit about the continuing violations exception. Ms. Motley did go back to the district court. She was found indigent. She was put on a payment plan. But even though she was found indigent, the district court told her she can't get her until she pays in full. And there's a differential treatment between those who can pay in full and get reinstatement immediately or avoid suspension and those who cannot and face indefinite suspension. That's an equal protection and due process violation. Can I ask you just briefly about the merits? I know you haven't had much of an opportunity to talk about the merits. But so, I mean, very unfortunately for you how the briefing went down in this case. Your opening brief is Jones panel, Jones panel, Jones panel. And then the Jones and Bank decision comes down. And then so you get whacked in the red brief with the Jones and Bank decision. But so, I mean, be that as it may, I mean, the Jones and Bank decision does say pretty clearly, doesn't it, that Bearden and Griffin are basically limited to the circumstances in which they arose, you know, sort of imprisonment and court proceedings. I don't think that's correct, Your Honor. And I guess here's the quote that I've just scrolled down in the margin of my notes so you can tell me if this is wrong. Bearden, which dealt with imprisonment, Griffin, which dealt with court proceedings, are limited to the context in which they arose. I don't think that that's true and here's why. Bearden, Williams, and Tate, they all developed in the context of imprisonment. But those cases are simply the application of a larger principle, which is you can't hold someone in contempt who can't comply with a court order. The Supreme Court has never carved out license suspension as an exception to that principle. You know, here's what happened in Jones. In Jones, the en banc court said that Florida's disenfranchisement statute didn't violate equal protection because everyone who was convicted of a felony was disenfranchised. The court, the en banc court said the case would resemble Bearden if instead of disenfranchising people as part of the criminal sentence, they instead used it as a tool to coerce payment long after sentencing and solely because a person failed to pay. That's what's happening here. Alabama doesn't suspend every person's driver's license who violates the state's traffic laws. Instead, it's determined that its penological interests are satisfied through a final loan. Instead, and unlike Jones and like Bearden, Williams, and Tate, they use driver's license suspension as a tool to coerce payment and doing so violates due process and equal protection under 100 years of Supreme Court precedent unless the state first determines that the driver willfully failed to pay. Okay, very well. Thank you both very much. That case is submitted.